Slip Op. 10-50

## UNITED STATES COURT OF INTERNATIONAL TRADE

—————————————————————
                                                    :
KYD, INC.,                                          :
                                                    :
                    Plaintiff,                      :
                                                    :       Before:        WALLACH, Judge
          v.                                        :       Court No.:     09-00034
                                                    :
UNITED STATES,                                      :       **PUBLIC VERSION**
                                                    :
                    Defendant,                      :
                                                    :
          and                                       :
                                                    :
POLYETHYLENE RETAIL CARRIER                         :
BAG COMMITTEE, HILEX POLY CO.,                      :
LLC, and SUPERBAG CORPORATION,                      :
                                                    :
                    Defendant-Intervenors.          :
—————————————————————:

[Plaintiff's Motion for Judgment on the Agency Record is GRANTED to the extent described in this opinion, and this matter is REMANDED to the U.S. Department of Commerce for action consistent with this opinion.]


                                     Dated:         May 6, 2010


Riggle & Craven (David J. Craven) for Plaintiff KYD, Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Carrie A. Dunsmore and Stephen C. Tosini); and Scott D. McBride, U.S. Department of Commerce, Of Counsel, for Defendant United States.

King & Spalding LLP (Stephen A. Jones and Daniel L. Schneiderman) for Defendant-Intervenors Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation.

# OPINION

**Wallach, Judge:**

# I
# INTRODUCTION

As a U.S. importer of merchandise subject to an antidumping duty order, Plaintiff KYD,

Inc. ("KYD") challenges determinations made by the U.S. Department of Commerce

("Commerce") in the 2006-07 administrative review of that order. <u>See</u> Polyethylene Retail

Carrier Bags from Thailand: Final Results and Partial Rescission of Antidumping Duty

Administrative Review, 74 Fed. Reg. 2,511, 2,511 (January 15, 2009) ("Final Results").  The

court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  In moving for judgment on the agency

record pursuant to U.S. Court of International Trade ("CIT") Rule 56.2, KYD argues that the

application of adverse inferences with respect to its relevant entries and the selection of a

particular antidumping duty rate for those entries are unsupported by substantial evidence on the

record and otherwise not in accordance with law. <u>See</u> Motion for Judgment on the Agency

Record Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("KYD's

Motion"); Memorandum in Support of Motion for Judgment on the Agency Record Pursuant to

Rule 56.2 of the Rules of the U.S. Court of International Trade ("KYD's Brief").

KYD's Motion is GRANTED to the extent described below.  Commerce's determination

of the assessment rate for KYD's relevant entries is unsupported by substantial evidence on the

record.  Commerce determined that assessment rate without regard to the information submitted

by KYD even though it made no finding under 19 U.S.C. § 1677e(b) that KYD had failed to

cooperate and no finding under 19 U.S.C. § 1677m(e) that it could decline to consider KYD's

information.  Accordingly, this matter is REMANDED to the agency for action consistent with

this opinion.

# II
# BACKGROUND

In 2004, Commerce published an antidumping duty order on certain polyethylene retail carrier bags ("PRCBs") from Thailand. See Antidumping Duty Order: Polyethylene Retail Carrier Bags from Thailand, 69 Fed. Reg. 48,204 (August 9, 2004) ("AD Order").  Before the third anniversary of the AD Order, Commerce provided notice of the opportunity to request an administrative review for the period of review from August 1, 2006 to July 31, 2007 ("the POR"). See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 72 Fed. Reg. 42,383, 42,383 (August 2, 2007).

During the POR, KYD had imported merchandise subject to the AD Order from King Pac Industrial Co., Ltd. ("King Pac") and Master Packaging Co., Ltd. ("Master Packaging").[1] See Memorandum from Barbara E. Tillman, Acting Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to Ronald K. Lorentzen, Acting Assistant Secretary for Antidumping and Countervailing Duty Operations, Re: Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Polyethylene Retail Carrier Bags from Thailand for the Period of Review August 1, 2006, through July 31, 2007 (January 7, 2009), 2009 WL 113442 ("Final Results Memo").  KYD and Defendant-Intervenors Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation requested an administrative review with respect to King Pac. See Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand; A-549-821; Request for §751 Administrative Review of King Pac Industrial Co.,

---

[1] Commerce "consider[s] King Pac Industrial Co., Ltd., and King Pak Ind. Co., Ltd., to be alternative spellings of the name of one company." Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Intent to Rescind in Part, 73 Fed. Reg. 52,288, 52,288 n.1 (September 9, 2008).

Ltd. (August 31, 2007), Public Record ("PR") 2; Letter from King & Spalding to Carlos M.

Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand: Request

for Administrative Review (August 31, 2007), PR 3 ("Defendant-Intervenors' Review Letter") at

1. Defendant-Intervenors also requested an administrative review with respect to Master

Packaging and three other Thai suppliers of the subject merchandise. See Defendant-Intervenors'

Review Letter at 1-2.

Commerce initially selected as mandatory respondents "the three largest

exporters/producers of subject merchandise . . . to the United States during the POR."

Memorandum from Kristin L. Case, International Trade Compliance Analyst, AD/CVD

Operations, Office 5, U.S. Department of Commerce, to Laurie Parkhill, Office Director,

AD/CVD Enforcement, Office 5, U.S. Department of Commerce, Re: Polyethylene Retail

Carrier Bags from Thailand - Respondent Selection (December 6, 2007), PR 22 ("Respondent

Selection Memo") at 4; Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of

Antidumping Duty Administrative Review and Intent to Rescind in Part, 73 Fed. Reg. 52,288,

52,289 (September 9, 2008) ("Preliminary Results").

KYD actively participated in Commerce's administrative review. KYD notified

Commerce that it would "monitor the submission of questionnaire responses" and provide

necessary information if any of its suppliers failed to submit an adequate response. Letter from

David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re:

Polyethylene Retail Carrier Bags from Thailand; A-549-821; Request to Extend Deadline for

Submission of Factual Information (December 28, 2007), PR 27 at 2. KYD subsequently

submitted information to Commerce "in a form resembling a response to Section C of

[Commerce's] standard questionnaire for U.S. sales and included copies of its relevant purchase

orders and supplier invoices. Additionally, KYD explained the sales, shipping, and payment terms associated with its purchases." Preliminary Results, 73 Fed. Reg. at 52,291; see Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand; A-549-821; Submission of Certain Factual Information Pursuant to 19 U.S.C. §1677m (January 25, 2008), Confidential Record ("CR") 11 ("KYD's Submission"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand; A-549-821; Submission of Certain Factual Information Pursuant to 19 U.S.C. §1677m (April 8, 2008), CR 28 ("KYD's Resubmission").[2] KYD suggested that Commerce could calculate "a separate assessment rate for imports by KYD" using KYD's information and, as necessary, information provided by those mandatory respondents that had responded to Commerce's requests. KYD's Submission at 3 n.2, 13; KYD's Resubmission at S-3 n.2, S-13.

As part of its submission, KYD also provided evidence that King Pac "has apparently arranged for all of its U.S. export business to be supplied by" Master Packaging. KYD's Submission at 4; KYD's Resubmission at S-4.[3] Defendant-Intervenors responded that "KYD's submission raises serious new issues which were – from [Defendant-Intervenors'] perspective – entirely unexpected" and urged Commerce to investigate the relationship between King Pac and Master Packaging. Letter from King & Spalding to Carlos M. Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand (February 4, 2008), CR 14 at 2. Commerce subsequently added Master Packaging as an additional mandatory respondent. Memo from Richard Rimlinger, Program Manager, AD/CVD Enforcement, Office 5, U.S. Department of

---

[2] KYD resubmitted its information after Commerce "determined that KYD had not justified many of its requests for proprietary treatment of [that] information." Preliminary Results, 73 Fed. Reg. at 52,291 n.3.

[3] KYD stated that it was also disclosing information to U.S. Customs and Border Protection pursuant to 19 U.S.C. § 1592(c)(4). See KYD's Submission at 4 n.3; KYD's Resubmission at S-4 n.3.

Commerce, to Laurie Parkhill, Office Director, AD/CVD Enforcement, Office 5, U.S.

Department of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand: Selection of

Master Packaging as a Mandatory Respondent (March 27, 2008), PR 79 ("Master Packaging

Selection Memo").[4]

King Pac and Master Packaging did not fully participate in the administrative review.

King Pac responded to Commerce's initial request for information but failed to respond to the

antidumping questionnaire, even after Commerce notified King Pac that it was extending the

deadline for a response. See Letter from Pattida Julsasaksrisakul, Managing Director, King Pac

Industrial Co., Ltd. to Office of AD/CVD Operations, U.S. Department of Commerce, Re:

Polyethylene Retail Carrier Bags from Thailand (October 19, 2007), PR 11; Preliminary Results,

73 Fed. Reg. at 52,289; Letter from Laurie Parkhill, Office Director, AD/CVD Enforcement,

Office 5, U.S. Department of Commerce, to King Pac Industrial Co., Ltd. (January 16, 2008), PR

39 ("Extension Letter").  Master Packaging responded to both the initial request for information

and the antidumping questionnaire but failed to respond to a supplemental questionnaire. See

Letter from Suthep Dansiriviroj, General Manager, Master Packaging Co., Ltd., to Office of

AD/CVD Operations, U.S. Department of Commerce (October 22, 2007), PR 12; Preliminary

Results, 73 Fed. Reg. at 52,289-90.

Because King Pac and Master Packaging failed to provide the information that

Commerce requested, Commerce preliminarily concluded that the use of facts available was

required with respect to each of them. See Preliminary Results, 73 Fed. Reg. at 52,290.

Furthermore, because each of these suppliers "failed to cooperate by not acting to the best of its

ability," Commerce preliminarily concluded that "the use of an adverse inference [was]

---

[4] Although Commerce was aware of KYD's allegations concerning King Pac and Master Packaging, see
KYD's Submission, its explanation for adding Master Packaging as a mandatory respondent makes no reference to
these allegations. See Master Packaging Selection Memo.

warranted with respect to" each of them. Id.  Commerce "preliminarily assigned King Pac and

Master Packaging the highest [transaction-specific] rate found in the less-than-fair-value

investigation, which was 122.88 percent." Id.; see also Initiation of Antidumping Duty

Investigations: Polyethylene Retail Carrier Bags from The People's Republic of China, Malaysia,

and Thailand, 68 Fed. Reg. 42,002, 42,004 (July 16, 2003) ("Based on comparisons of export

price to normal value" provided in the 2003 petition, "the estimated dumping [rates] for PRCBs

from Thailand range from 34.84 percent to 122.88 percent.").[5]

For the purpose of corroboration, Commerce preliminarily concluded that the assigned

dumping rate was reliable and relevant. Preliminary Results, 73 Fed. Reg. at 52,290.  As to

reliability, Commerce stated that the rate had been "calculated from source documents included

with the petition" and had been found reliable in the investigation. Id.  As to relevancy,

Commerce stated that the rate had been calculated from a price quotation that "reflected

commercial practices of the particular industry during the period of investigation," had not been

contested in the investigation, and had been applied to King Pac in the previous administrative

review. Id.

Commerce explicitly declined to calculate an importer-specific assessment rate for KYD

and implicitly declined to use the information that KYD provided. Id. at 52,291.  Commerce

noted that KYD had proposed using "data collected from other respondents as a surrogate." Id.

However, Commerce concluded that it did "not have all of the information that is necessary to

calculate an accurate margin for the supplier(s) from which KYD purchased subject merchandise

during the POR." Id.

---

[5] Under its statutory definition, "dumping margin" refers to an amount rather than a percentage. See 19
U.S.C. § 1677(35)(A); infra Part IV.A.

Following publication of the Preliminary Results, KYD and Defendant-Intervenors submitted administrative briefs to Commerce. See Case Brief of KYD, Inc., Case No. A-549-821, U.S. Department of Commerce (October 15, 2008), PR 184 ("KYD's Administrative Brief"); Petitioners' Case Brief, Case No. A-549-821, U.S. Department of Commerce (October 15, 2008), PR 185.  KYD also requested, and Commerce held, an administrative hearing. See Transcript of Hearing, U.S. Department of Commerce, Administrative Review of the Antidumping Duty Order on Polyethylene Bags from Thailand (October 29, 2008), PR 189; Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: Polyethylene Retail Carrier Bags from Thailand; A-549-821, Request for a Hearing (September 16, 2008), PR 179.

The Final Results mirrored the Preliminary Results with respect to all issues relevant to this action. See Final Results, 74 Fed. Reg. 2,511, 2,511-12; see also Final Results Memo. Commerce announced that it had relied on "total adverse facts available to establish the dumping [rates] for King Pac and Master Packaging" and that it would accordingly "instruct [U.S. Customs and Border Protection] to apply [an antidumping duty assessment rate] of 122.88 percent to all entries of subject merchandise produced and/or exported by these companies." Final Results, 74 Fed. Reg. at 2,512.  With respect to entries supplied by the two other mandatory respondents, Commerce calculated importer-specific assessment rates and reported weighted average dumping margins of 32.67 percent and 8.94 percent. Id.

KYD subsequently commenced this action under 19 U.S.C. § 1516a(a)(2). See Summons (January 26, 2009); Complaint (February 5, 2009).  Defendant-Intervenors intervened as a matter of right pursuant to CIT Rule 24(a). See February 6, 2009 Order.  KYD moved for judgment on the agency record pursuant to CIT Rule 56.2. See KYD's Motion.

# III
# STANDARD OF REVIEW

The court will hold unlawful a determination by Commerce resulting from an administrative review of an antidumping duty order if that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); see 19 U.S.C. § 1516a(a)(2)(B)(iii).

A determination is supported by substantial evidence if the record contains "evidence that a reasonable mind might accept as adequate to support a conclusion." Cleo Inc. v. United States, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951)). While the court must consider contradictory evidence, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Id. (citing Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001); U.S. Steel Group v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996); Universal Camera, 340 U.S. at 487-88).

To determine whether Commerce's interpretation and application of an antidumping statute at issue is otherwise "in accordance with law," the court must conduct the two-step analysis articulated by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Under the first step of the Chevron analysis, the court must ascertain "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) (quoting Chevron, 467 U.S. at 842-43).

The court reaches the second step of the <u>Chevron</u> analysis only "if the statute is silent or ambiguous with respect to the specific issue." <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 843).  Under this second step, the court must evaluate whether Commerce's interpretation "is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843.  The agency's construction need not be the only reasonable interpretation or even the most reasonable interpretation. <u>See</u> <u>Zenith Radio Corp. v. United States</u>, 437 U.S. 443, 450, 98 S. Ct. 2441, 57 L. Ed. 2d 337 (1978) (citations omitted).  The court must defer to Commerce's reasonable interpretation of a statute even if it might have adopted another interpretation had the question first arisen in a judicial proceeding. <u>Id.</u> (citations omitted).

# IV
# DISCUSSION

Jurisdiction is available under 28 U.S.C. § 1581(c) to review KYD's claims.  KYD argues that Commerce's application of adverse inferences and selection of a particular antidumping duty assessment rate are unsupported by substantial evidence on the record and otherwise not in accordance with law.  At this point it is sufficient to conclude that substantial evidence does not support Commerce's selection, in disregard of information submitted by KYD, of a total adverse facts available assessment rate for KYD's relevant entries.[6]

---

[6] KYD also argues that the total adverse facts available dumping rate that Commerce selected for King Pac and Master Packaging was improperly corroborated and impermissibly punitive. <u>See</u> KYD's Brief at 19-35.  As KYD acknowledges, this court previously rejected similar arguments in <u>KYD, Inc. v. United States</u>, 613 F. Supp. 2d 1371 (CIT 2009) ("<u>KYD I</u>"), <u>appeal docketed</u>, No. 09-1366 (Fed. Cir. May 28, 2009). <u>See</u> KYD's Brief at 19 n.1; <u>see generally</u> <u>KYD I</u>, 613 F. Supp. 2d at 1376-81.  Reassessment of these arguments may be appropriate in light of <u>Gallant Ocean (Thailand) Co. v. United States</u>, No. 2009-1282, 2010 WL 1508198 at *4-5 (Fed. Cir. April 16, 2010) (holding that a particular total adverse facts available rate that was "more than ten times higher than the average dumping [rate] for cooperating respondents" was unsupported by substantial evidence because it was "unrelated to commercial reality and, thus, not a reasonably accurate estimate of [the exporter's] actual dumping rate") (citations omitted).  At this point, however, such reassessment would be premature, since Commerce could render these arguments moot by considering KYD's information pursuant to 19 U.S.C. § 1677m(e). <u>See</u> <u>infra</u> Part IV.B.

**A**
**Relevant Statutory Framework**

In an administrative review, Commerce is required to "determine—(i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry." 19 U.S.C. § 1675(a)(2)(A); <u>see also</u> 19 U.S.C. §§ 1677b (defining "normal value"), 1677a (defining "export price"). The "dumping margin" is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." 19 U.S.C. § 1677(35)(A).

"[I]f there is a significant volume of sales of the subject merchandise or a significant number or types of products," then Commerce is authorized, but not required, to "use averaging and statistically valid samples" to determine export price, constructed export price, or normal value and to "carry[] out" the administrative review. 19 U.S.C. § 1677f-1(a). The "preferred methodology" in an administrative review is to compare "export prices (or constructed export prices) of individual transactions to the weighted average price of sales of the foreign like product." 19 U.S.C. § 1677f-1(d)(2); Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (1994) ("SAA") at 843, <u>reprinted in</u> 1994 U.S.C.C.A.N. 4040, 4178.[7]

If "necessary information is not available on the record" or if "an interested party or any other person" fails to submit complete, timely, and verifiable information in a reasonably proper form or "significantly impedes" the administrative review, then Commerce is required to "use the

---

[7] The Uruguay Round Agreements Act approved the new World Trade Organization Agreement, and the agreements annexed thereto, "resulting from the Uruguay Round of multilateral trade negotiations [conducted] under the auspices of the General Agreement on Tariffs and Trade." 19 U.S.C. § 3511(a)(1). The SAA, which was submitted to and approved by Congress, <u>see</u> 19 U.S.C. § 3511(a)(2), is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the Uruguay Round Agreements] Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

facts otherwise available" in making the applicable determination. 19 U.S.C. § 1677e(a). In selecting from among these "facts otherwise available," Commerce is permitted, but not required, to "use an inference that is adverse to the interests of" an interested party that Commerce finds "has failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]." 19 U.S.C. § 1677e(b); see SAA at 870, 1994 U.S.C.C.A.N. at 4199 ("Where a party has not cooperated, Commerce . . . may employ adverse inferences about the missing information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully."). When Commerce resorts to what it deems "total adverse facts available," it applies adverse inferences "not only to the facts pertaining to specific sales for which information was not provided, but to the facts respecting all of [a respondent's] sales encompassed by the relevant antidumping duty order." Shandong Huarong Mach. Co. v. United States, 30 CIT 1269, 1271 n.2, 435 F. Supp. 2d 1261 (2006) (citing Gerber Food (Yunnan) Co., Ltd. v. United States, 29 CIT 753, 769 n.3, 387 F. Supp. 2d 1270 (2005)).

The pertinent version of 19 U.S.C. § 1677e(b) was intended to "conform[] with" Commerce's prior use of adverse presumptions under a "best information available" standard. SAA at 870, 1994 U.S.C.C.A.N. at 4199. The Federal Circuit had concluded that this statutory standard permitted Commerce to presume that "the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced current information showing the margin to be less." Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990). Moreover, "since the presumption is

rebuttable, it" induces cooperation with Commerce "without sacrificing the basic purpose of the statute: determining current margins as accurately as possible." Id. at 1191.[8]

Statutory provisions relevant to the instant action do impose certain obligations on Commerce that were not explicit in the best information available standard. See SAA at 864, 1994 U.S.C.C.A.N. at 4194; Fujian Lianfu Forestry Co., Ltd. v. United States, 638 F. Supp. 2d 1325, 1336 (CIT 2009); Gerber Food (Yunnan) Co. v. United States, 31 CIT 921, 947-948, 491 F. Supp. 2d 1326 (2007); Helmerich & Payne, Inc. v. United States, 22 CIT 928, 932 n.6, 24 F. Supp. 2d 304 (1998).

First, when Commerce "relies on secondary information rather than on information obtained in the course of" the administrative review, it "shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). Congress intended for this requirement to "prevent the petition rate (or other adverse inference rate), when unreasonable, from prevailing and to block any temptation by Commerce to overreach reality in seeking to maximize deterrence." PAM, S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009) (quoting F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

Second, in reaching a determination, Commerce:

shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by [Commerce], if—
    (1) the information is submitted by the deadline established for its submission,
    (2) the information can be verified,
    (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,

---

[8] Despite the changed statutory context, the Federal Circuit has since cited Rhone Poulenc for the proposition that Commerce can select the highest prior dumping rate, see Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002) (citing Rhone Poulenc, 899 F.2d at 1190), and for the proposition that Commerce is to "calculate dumping margins as accurately as possible," Parkdale Int'l v. United States, 475 F.3d 1375, 1380 (Fed. Cir. 2007) (citing Rhone Poulenc, 899 F.2d at 1191).

(4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by [Commerce] with respect to the information, and
(5) the information can be used without undue difficulties.

19 U.S.C. § 1677m(e); see 19 C.F.R. § 351.308(e); Gerber Food, 29 CIT at 764;

Shandong Huarong Gen. Group Corp. v. United States, 27 CIT 1568, 1581-82 (2003).

This court has previously considered Commerce's obligations under 19 U.S.C. § 1677m(e) with respect to information submitted by an importer. In the administrative review challenged in World Finer Foods, Inc. v. United States, 24 CIT 541 (2000), an importer submitted information about its purchases from an exporter that had withdrawn from the U.S. market and was suffering financially as a result of the antidumping duty rate that Commerce had imposed in the original investigation. World Finer Foods, 24 CIT at 542, 544. Commerce did not consider the submission and decided to use inferences that were explicitly adverse to the exporter (and implicitly adverse to the importer). See id. at 542-43. This court concluded, in part, that Commerce had failed "to consider the information submitted by" the importer without first evaluating "any of the five statutory criteria" contained in 19 U.S.C. § 1677m(e). Id. at 545 (citation omitted).[9] "[E]ven though Commerce could not use the [importer's] information to determine the normal value," that information "indicated that [the exporter] likely would not have received a high margin, and certainly not a margin as high as the one selected by Commerce." Id. at 545-46.

---

[9] This court also concluded that Commerce had failed to "respond to overtures of cooperation from the exporter." World Finer Foods, 24 CIT at 545. The record in the instant action contains no evidence of "overtures of cooperation" from King Pac and instead demonstrates that Commerce sought to assist and accommodate both King Pac and Master Packaging. See, e.g., Letter from Laurie Parkhill, Office Director, AD/CVD Enforcement 5, U.S. Department of Commerce, to King Pac Industrial Co., Ltd. (December 6, 2007), PR 20; Extension Letter; Letter from Laurie Parkhill, Office Director, AD/CVD Enforcement 5, U.S. Department of Commerce, to KYD, Inc. c/o David Craven (January 22, 2008), PR 40; Letter from Laurie Parkhill, Department of Commerce, to Master Packaging Co., Ltd. (March 27, 2008), PR 77; Memorandum from Richard Rimlinger to Laurie Parkhill, Re: Polyethylene Retail Carrier Bags from Thailand: Master Packaging's correspondence received June 12, 2008 (June 30, 2008), PR 138.

**B**

**Commerce's Decision To Disregard KYD's Information Is Unsupported By Substantial Evidence On The Record**

In the instant action, the application of 19 U.S.C. § 1677m(e) to the information submitted by KYD reflects the "unambiguously expressed intent of Congress," Wheatland Tube, 495 F.3d at 1359. See World Finer Foods, 24 CIT at 545 ("The [importer's] information meets all of the criteria set forth in 19 U.S.C. § 1677m(e) for the use of information.").[10] As the importer of subject merchandise, KYD is an interested party. See 19 U.S.C. § 1677(9)(A). The purchase orders, invoices, and computer data that it submitted are "necessary to the determination" of the export price of these entries. 19 U.S.C. § 1677m(e); see 19 U.S.C. § 1675(a)(2)(A); 19 U.S.C. § 1677a.

Moreover, in submitting its information, KYD explicitly addressed each 19 U.S.C. § 1677m(e) criterion. See KYD's Submission at 12-14; KYD's Resubmission at S-11-14. KYD's information is timely and susceptible to verification. See KYD's Submission at 12-13; KYD's Resubmission at S-12-13. It appears to provide a "reliable basis" for determining export price, even if supplementation is necessary to account for the adjustments specified in 19 U.S.C. § 1677a(c). See 19 U.S.C. § 1677m(e)(3); KYD's Submission at 13; KYD's Resubmission at S-13; 19 U.S.C. § 1677a(c).[11] Its use presents no obvious difficulties, as Commerce can resort to the facts otherwise available in determining the normal value of KYD's relevant entries. See KYD's Submission at 13-14; KYD's Resubmission at S-14; KYD's Administrative Brief at 28; 19 U.S.C. §§ 1677b(a)(4), (e)(2)(B)(ii). Finally, the record suggests that, in the context of the

---

[10] KYD's submission of information pursuant to 19 U.S.C. § 1677m(e) distinguishes the instant administrative review from the previous administrative review, which KYD challenged unsuccessfully in KYD I, 613 F. Supp. 2d 1371. See supra note 6.

[11] 19 U.S.C. § 1677m(e)(3) does not require complete information, merely "information [that] is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination." 19 U.S.C. § 1677m(e)(3). "Basis" means, inter alia, "the principal component of something" or "something on which something else is established or based." Merriam-Webster Online Dictionary (2010).

administrative review, KYD "acted to the best of its ability in providing the information"
consistent with Commerce's requirements, 19 U.S.C. § 1677m(e)(4). <u>See</u> KYD's Submission at
14; KYD's Resubmission at S-14.  By attempting to "produce[] <u>current</u> information showing the
margin to be less" than "the highest prior margin," <u>Rhone Poulenc</u>, 899 F.2d at 1190, KYD tried
to act exactly as the Federal Circuit anticipated that an importer in KYD's position would. <u>See id.</u>

Accordingly, Commerce should have either considered KYD's information or explained
why it could decline to do so pursuant to 19 U.S.C. § 1677m(e).[12]  However, Commerce did
neither. <u>See</u> Final Results Memo.  Indeed, Commerce did not determine the export price, the
normal value, or the dumping margin of KYD's entries as directed by 19 U.S.C. § 1675(a).
Instead, it resorted to "total adverse facts available" and selected a uniform antidumping duty
rate of 122.88 percent. <u>See</u> Preliminary Results, 73 Fed. Reg. at 52,289-90; Final Results, 74
Fed. Reg. at 2,512.

Commerce's explanation of its resort to total adverse facts available is at odds with the
plain meaning of 19 U.S.C. § 1675(a)(2)(A). <u>See</u> Final Results Memo.  Commerce concluded
that it was "not authorize[d]" to "calculate an importer-specific assessment rate that is based on
anything other than the dumping margins [Commerce] determines and applies to King Pac and
Master Packaging for the period of review." Final Results Memo.  However, Commerce is not
directed to determine dumping margins at an exporter level.  Rather, it is directed by Congress to
determine the normal value and export price of—and the dumping margin for—"<u>each entry</u> of
the subject merchandise." 19 U.S.C. § 1675(a)(2)(A) (emphasis added).  As Commerce's own
regulation states, Commerce "normally will calculate an assessment rate for each importer of

---

[12] Had Commerce found pursuant to 19 U.S.C. § 1677e(b) that KYD did "not act[] to the best of its ability
to comply with a request for information," a separate finding under 19 U.S.C. § 1677m(e) would not have been
necessary. <u>See</u> <u>NSK Ltd. v. United States</u>, 481 F.3d 1355, 1360 n.1 (Fed. Cir. 2007).  However, neither Commerce
nor any party in this action has suggested that KYD was uncooperative. <u>See, e.g.</u>, Final Results Memo.

subject merchandise covered by" an administrative review and "normally will calculate [that] assessment rate by dividing the dumping margin found on the subject merchandise examined by the entered value of such merchandise for normal customs duty purposes." 19 C.F.R. § 351.212(b)(i); see also Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,314-15 (May 19, 1997) (justifying Commerce's prior shift from an entry-specific assessment method to an importer-specific assessment method); Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,316-17 (February 27, 1996) ("To the extent possible, these assessment rates will be specific to each importer, because the amount of duties assessed should correspond to the degree of dumping reflected in the price paid by each importer.").[13]

An additional regulation reflects Commerce's recognition of the statutory propriety of entry- and importer-specific determinations. 19 C.F.R. § 351.402(f) requires each importer to certify whether its suppliers have agreed to pay or reimburse antidumping duties for each of its subject entries, permits Commerce to presume reimbursement if no such certification is filed, and directs Commerce to reduce the export price to negate actual or presumed reimbursement. See 19 C.F.R. § 351.402(f); see also 19 C.F.R. § 353.26 (1989); 19 C.F.R. § 353.55 (1981); Hoogovens Staal BV v. United States, 22 CIT 139, 140-41, 4 F. Supp. 2d 1213 (1998). In other words, Commerce correctly believes that it is authorized to determine specific export prices, and hence specific dumping margins, for entries and for importers.

It was in the context of this regulation that this court previously rejected arguments similar to those now raised by Defendant and Defendant-Intervenors. In the administrative

---

[13] Use of total adverse facts available could produce antidumping duties that are highest when the actual margin of dumping is lowest (or nonexistent). This is because the antidumping duty would be directly proportional to the export price even though the actual margin of dumping would be inversely proportional to that price (assuming that normal value remains constant). See 19 U.S.C. §§ 1401a, 1677a, 1677b. A simplified example illustrates this phenomenon: Assume that certain merchandise has a constant normal value of $10 and is subject to a total adverse facts available antidumping duty of 100%. For sales of that merchandise at $8, $9, and $10, the respective actual dumping margins would be $2, $1, and $0, but the respective duties would be $8, $9, and $10. Consideration of KYD's information pursuant to 19 U.S.C. § 1677m(e) would obviate this paradoxical result.

review challenged in <u>Valley Fresh Seafood, Inc. v. United States</u>, 31 CIT 1989 (2007),

Commerce found that an exporter had entered into a reimbursement agreement with an importer

other than the plaintiff. <u>See</u> <u>Valley Fresh</u>, 24 CIT at 1992.  Commerce then made an adverse

inference that the exporter "had entered into such agreements with all of its U.S. importers," and

it accordingly increased the assessment rate for all of these importers, including the plaintiff. <u>Id.</u>

The plaintiff challenged this adverse inference, and the United States and the defendant-

intervenors unsuccessfully moved to dismiss. <u>See</u> <u>id.</u> at 1997.  The United States contended that

"[a]bsent certain exceptions which do not apply here . . . , the law does not provide for importer

rates which are separate from the producer/exporter rates." <u>Id.</u> (quotation omitted).  The

defendant-intervenors likewise contended that "when Commerce applies facts otherwise

available and adverse inferences to a foreign producer or exporter that has failed to cooperate to

the best of its ability, that same rate applies equally to all of the importers for that producer or

exporter regardless of the expectations or specific actions of the importers involved." <u>Id.</u>

(quotation omitted).  Because this court found no merit in these arguments, particularly in light

of 19 U.S.C. § 1675(a)(2)(A), it declined to dismiss the action. <u>Id.</u> at 1998.

These arguments—including Defendant's augmentation of Commerce's administrative

analysis with selectively quoted statutory language—are no more persuasive in the instant action.

Defendant states that "Commerce 'shall determine the individual weighted average dumping

margin for each <u>known exporter and producer</u> of the subject merchandise.'" Defendant's

Response at 10 (quoting and emphasizing 19 U.S.C. § 1677f-1(c)(1)).  19 U.S.C. § 1677f-1(c)(1)

actually states the "[g]eneral rule" that, "[i]n determining weighted average dumping margins

under" 19 U.S.C. § 1675(a), <u>inter alia</u>, Commerce "shall determine the individual weighted

average dumping margin for each known exporter and producer of the subject merchandise." 19

U.S.C. § 1677f-1(c)(1).[14]  It does not state that Commerce is to calculate only weighted average dumping margins.

Indeed, "dumping margin" and "weighted average dumping margin" have distinct statutory definitions. See 19 U.S.C. § 1677(35)(A)-(B).  19 U.S.C. § 1675(a) refers explicitly to weighted average dumping margins only in the context of new exporters and producers. See 19 U.S.C. § 1675(a)(2)(B)(i).  Otherwise, 19 U.S.C. § 1675(a) directs Commerce to "determine . . . the dumping margin for each . . . entry," 19 U.S.C. § 1675(a)(2)(A), and establishes this determination as "the basis for the assessment of . . . antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties," 19 U.S.C. § 1675(a)(2)(C).[15]

This court has previously recognized that 19 U.S.C. § 1675(a) entitles a cooperative party "to have its margin determined accurately and according to the relevant information on the record of the administrative review." SKF USA, Inc. v. United States, Slip Op. 2009-148, 2009 Ct. Int'l Trade LEXIS 154 at *30 (December 21, 2009) (citations omitted).[16]  To the extent that

---

[14] 19 U.S.C. § 1677f-1(c)(2) provides an exception authorizing, but not requiring, Commerce to limit the examination to, inter alia, certain "exporters and producers." 19 U.S.C. § 1677f-1(c)(2).

[15] 19 U.S.C. § 1673e(c)(3), from which Defendant also quotes, applies only to "[s]ecurity in lieu of estimated duty pending early determination of duty." 19 U.S.C. § 1673e(c); see Defendant's Response at 10 (quoting 19 U.S.C. § 1673e(c)(3)).

[16] In the administrative review challenged in SKF, Commerce used an inference adverse to an exporter based on a finding that a supplier unaffiliated with the exporter had failed to act to the best of its ability. SKF, 2009 Ct. Int'l Trade LEXIS 154 at *4, *23-24.  This court concluded that Commerce lacks "authority under 19 U.S.C. § 1677e(b) to use an inference that is adverse to a party to the proceeding absent a factual finding that such party 'failed to cooperate by not acting to the best of its ability to comply with a request for information.'" Id. at *26-27 (citing 19 U.S.C. § 1677e(b)).  Although this court found that 19 U.S.C. § 1677e(b) is "silent or ambiguous on the precise question" of whether "the non-cooperating party against whom an inference is drawn [must] also be a party to the proceeding," it could not accept as reasonable "a construction of 19 U.S.C. § 1677e(b) under which the party who suffers the effect of the adverse inference is not the party who failed to cooperate." Id. at *27-28 (citing Chevron, 467 U.S. at 843), *31.  Paradoxically, a party that cooperated fully could obtain a less favorable result "than if it had cooperated fully." Id. at *31 (quoting SAA at 870; 1994 U.S.C.C.A.N. at 4199).  That construction, this court stated, "makes a mockery of any notion of fairness" by permitting an "absurd result" that contravenes the "fundamental purpose of the antidumping law," which is to "determin[e] current margins as accurately as possible." Id. at *30 (quoting Rhone Poulenc, 899 F.2d at 1191) (citing 19 U.S.C. § 1675(a)), *32.

Commerce believes that it must treat a cooperative importer otherwise, it is misinterpreting its

clear statutory mandate. Because the record in the instant action contains no evidence that

Commerce evaluated any 19 U.S.C. § 1677m(e) criteria with respect to KYD's information,

Commerce's disregard of this information is "unsupported by substantial evidence on the

record." 19 U.S.C. § 1516a(b)(1)(B)(i); <u>see</u> <u>World Finer Foods</u>, 24 CIT at 546. On remand,

Commerce must either consider this information in determining an assessment rate for KYD's

entries or explain why it can decline to do so pursuant to 19 U.S.C. § 1677m(e).[17]

# V
# CONCLUSION

For the reasons and to the extent stated above, KYD's Motion is GRANTED. This

matter is REMANDED to Commerce for action consistent with this opinion.

__/s/ Evan J. Wallach_____
Evan J. Wallach, Judge

Dated: May 6, 2010
       New York, New York

---

[17] Commerce can continue to ensure that King Pac and Master Packaging do "not obtain a more favorable result by failing to cooperate than if [they] had cooperated fully." SAA at 870, 1994 U.S.C.C.A.N. at 4199. Remand in this action is limited to KYD's entries of the subject merchandise during the POR—entries which have already occurred and for which KYD alone is required to pay duties pursuant to 19 U.S.C. § 1673g(b)(4). Commerce need not revisit the assessment rate for entries not imported by KYD or the cash deposit rate for entries subsequently exported by King Pac and Master Packaging. KYD's information would not appear to provide a "reliable basis" for these determinations, 19 U.S.C. § 1677m(e)(3), as they involve entries by importers other than KYD. Finally, it is premature to decide whether Commerce may use inferences that are adverse to KYD, either in the determination of the normal value of KYD's entries or in the renewed application of "total adverse facts available." On remand, Commerce could conceivably determine that the use of adverse inferences is unwarranted by the facts even if such use is authorized by the law.

UNITED STATES COURT OF INTERNATIONAL TRADE

```
——————————————————————————          :
                                    :
KYD, INC.,                          :
                                    :
            Plaintiff,              :
                                    :        Before:      WALLACH, Judge
      v.                            :        Court No.:    09-00034
                                    :
UNITED STATES,                      :
                                    :
            Defendant,              :
                                    :
      and                           :
                                    :
POLYETHYLENE RETAIL CARRIER         :
BAG COMMITTEE, HILEX POLY CO.,      :
LLC, and SUPERBAG CORPORATION,      :
                                    :
            Defendant-Intervenors.  :
——————————————————————————          :
```

## **ORDER**

This case having come before the court upon Plaintiff's Motion for Judgment on the

Agency Record Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade

("Plaintiff's Motion"); the court having reviewed all papers and pleadings on file herein, having

heard oral argument by each party, and after due deliberation, having reached a decision herein;

now, in conformity with said decision, it is hereby

ORDERED that Plaintiff's Motion is GRANTED to the extent described in the opinion

accompanying this order ("the Opinion"); and it is further

ORDERED that this matter is REMANDED to the U.S. Department of Commerce for

action consistent with the Opinion; and it is further

ORDERED that all parties shall confer and submit, jointly if possible, no later than June

11, 2010 a proposed schedule for submission of the remand determination, responses to that

determination, and replies to those responses; and it is further

ORDERED that each party shall review the Opinion and shall in writing no later than

May 13, 2010 notify the court whether any information contained in the Opinion is confidential,

identify any such information, and request the deletion of any such information from the public

version of the Opinion to be issued thereafter.  If a party determines that information is

confidential, it shall propose alternate language to replace such information.  If a party

determines that no information is confidential, it shall so notify the court in writing no later than

May 13, 2010.

                                                __/s/ Evan J. Wallach_____
                                                Evan J. Wallach, Judge

Dated: May 6, 2010
        New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
Deputy Clerk