Slip Op. 12-10

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KYD, INC.,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES,<br><br>       Defendant.<br><br>POLYETHYLENE RETAIL CARRIER BAG<br>COMMITTEE, HILEX POLY CO., LLC,<br>and SUPERBAG CORPORATION,<br><br>       Defendant-Intervenors. | Before: Donald C. Pogue,<br>Chief Judge<br><br>Court No. 09-00034 |

**OPINION**

[Affirming Department of Commerce's remand results.]

Dated: January 18, 2012

David John Craven, Riggle and Craven, of Chicago, IL, for Plaintiff.

Carrie Anna Dunsmore, Renee A. Gerber, Stephen Carl Tosini and Vincent dePaul Phillips, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With them on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director. Of counsel on the brief were Rachel Elizabeth Wenthold and Scott McBride, Attorneys, U.S. Department of Commerce, of Washington, DC.

Daniel Lawrence Schneiderman and Stephen Andrew Jones, King & Spalding LLP, of Washington, DC, for Defendant-Intervenors.

**Pogue, Chief Judge:** This action returns to court following a

second remand to the Department of Commerce ("Commerce" or the

"Department").[1]  Plaintiff KYD, Inc. ("KYD"), an unaffiliated

domestic importer, challenges these Final Remand Redetermination

Results ("Second Remand Results").[2]

Specifically, KYD challenges the dumping margin ("rate")

that Commerce selected in the Second Remand Results for KYD's

entries of subject merchandise, certain retail carrier bags

("carrier bags"), imported from Thailand and exported by King Pac

Industrial Co., Ltd. ("King Pac") and Master Packaging Co., Ltd.

("Master Packaging").

The court has jurisdiction over this matter pursuant to

Section 516A(a)(2) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1516a(a)(2) (2006)[3] and 28 U.S.C. § 1581(c).

For the reasons discussed below, the court concludes that

the Second Remand Results comply with the court's remand order,

are free of legal error, are based on a reasonable reading of the

record evidence, and therefore are affirmed.

---

[1] The second remand was ordered by the court's decision in
KYD, Inc. v. United States, __ CIT __, 779 F. Supp. 2d 1361
(2011) ("KYD III").

[2] Defendant-Intervenors are Polyethylene Retail Carrier Bag
Committee et al. ("PRCBC").

[3] All further citations to the Tariff Act of 1930, as
amended, are to Title 19 of the U.S. Code, 2006 edition.

<u>**BACKGROUND**</u>

This matter arises from Commerce's third administrative review of its 2004 antidumping duty order on carrier bags from Thailand, <u>Antidumping Duty Order: Polyethylene Retail Carrier Bags from Thailand</u>, 69 Fed. Reg. 48,204 (Dep't Commerce Aug. 9, 2004) (the "Order").[4]  KYD and PRCBC requested the third review, with respect to King Pac, and PRCBC requested review with respect to Master Packaging and three other suppliers.  While KYD fully participated in the review, King Pac and Master Packaging did not. <u>Polyethylene Retail Carrier Bags from Thailand: Preliminary Results of Antidumping Duty Administrative Review and Intent to Rescind in Part</u>, 73 Fed. Reg. 52,288, 52,290 (Dep't Commerce Sep. 9, 2008) ("Preliminary Results").[5]

Because the exporter/producers did not so participate, Commerce determined that use of facts available, <u>see</u> 19 U.S.C.

---

[4] The third administrative review covered entries for the period of review ("POR") from August 1, 2006–July 31, 2007.  <u>See Polyethylene Retail Carrier Bags from Thailand: Final Results and Partial Rescission of Antidumping Duty Administrative Review</u>, 74 Fed. Reg. 2,511 (Dep't Commerce Jan. 15, 2009)(final results of antidumping duty administrative review) ("<u>Final Results</u>"), and accompanying Issues & Decision Memorandum, A-549-821, ARP 06-07 (Jan. 7, 2009).  The court presumes knowledge of the facts and proceedings of the previous determinations in this matter.  <u>See KYD III</u> at 1365–72.

[5] No party disputes that King Pac and Master Packaging failed to cooperate to the best of their abilities by not responding to Commerce's requests for information.  <u>Second Remand Results</u> 18, Aug. 18, 2011, ECF No. 98.

§ 1677e(a),[6] was required and that an adverse inference, see 19

U.S.C. § 1677e(b),[7] was warranted to determine KYD's rate (an

adverse facts available ("AFA") rate). Preliminary Results at

52,290.  Commerce ultimately assigned a rate of 122.88 percent,

from the original investigation, for KYD's entries. Id.  In doing

so, Commerce declined to use information that KYD provided,

---

[6] "(a) In general
If—

    (1) necessary information is not available on the record, or
    (2) an interested party or any other person—
        (A) withholds information that has been requested by the
        administering authority or the Commission under this
        subtitle,
        (B) fails to provide such information by the deadlines for
        submission of the information or in the form and manner
        requested, subject to subsections (c)(1) and (e) of
        section 1677m of this title,
        (C) significantly impedes a proceeding under this subtitle,
        or
        (D) provides such information but the information cannot be
        verified as provided in section 1677m(i) of this title,

the administering authority and the Commission shall, subject to
section 1677m(d) of this title, use the facts otherwise available
in reaching the applicable determination under this subtitle."

19 U.S.C. § 1677e(a).

[7] "If the administering authority or the Commission (as the
case may be) finds that an interested party has failed to
cooperate by not acting to the best of its ability to comply with
a request for information from the administering authority or the
Commission, the administering authority or the Commission (as the
case may be), in reaching the applicable determination under this
subtitle, may use an inference that is adverse to the interests
of that party in selecting from among the facts otherwise
available."

19 U.S.C. § 1677e(b).

including specifically its sales data, and did not calculate an

importer-specific assessment rate. Id. at 52,291.  The Final

Results mirrored these decisions. Final Results at 2,511-12.

     KYD commenced this action, challenging the application of

adverse inferences with respect to the relevant entries and

Commerce's selection of an antidumping duty rate for those

entries.  The court remanded, concluding that 19 U.S.C.

§ 1677m(e)[8] required Commerce to either consider KYD's

information or explain why it declined to do so. KYD, Inc. v.

United States, __ CIT __, 704 F. Supp. 2d 1323, 1334 (2010) ("KYD

─────────────────────

     [8] "(e)Use of certain information

In reaching a determination under section 1671b, 1671d, 1673b,
1673d, 1675, or 1675b of this title the administering authority
and the Commission shall not decline to consider information that
is submitted by an interested party and is necessary to the
determination but does not meet all the applicable requirements
established by the administering authority or the Commission,
if--

  (1) the information is submitted by the deadline established
  for its submission,

  (2) the information can be verified,

  (3) the information is not so incomplete that it cannot serve
  as a reliable basis for reaching the applicable determination,

  (4) the interested party has demonstrated that it acted to the
  best of its ability in providing the information and meeting
  the requirements established by the administering authority or
  the Commission with respect to the information, and

  (5) the information can be used without undue difficulties."

19 U.S.C. § 1677m(e).

II").

In response, Commerce filed its First Remand Results on
September 2, 2010, explaining but not altering the 122.88 percent
rate.  Reviewing those results, the court concluded that the
statute permitted Commerce to select a rate adverse to KYD, but
that the 122.88 percent rate was neither corroborated[9] nor
supported by substantial evidence in the record. <u>KYD III</u> at 1368.
The court recognized that although that rate may have been
reliable when first used, it was no longer relevant to KYD's
imports in the third review, especially when considered in light
of KYD's own data. <u>Id.</u> at 1381-83.

Invoking a prior opinion in an earlier review of the Order,
the court explained that, in selecting an AFA rate,  "Commerce is
permitted to use a 'common sense inference that the highest prior
margin is the most probative evidence of current margins because,
if it were not so, the importer, knowing of the rule, would have
produced <i>current</i> information showing the margin to be less." <u>KYD
Inc. v. United States</u>, 607 F.3d 760, 766-67 (Fed. Cir. 2010)
("<u>KYD I</u>") (quoting <u>Rhone Poulenc, Inc. v. United States</u>, 899 F.2d

---

[9] <u>See</u> 19 U.S.C. § 1677e(c)("When the administering authority
or the Commission relies on secondary information rather than on
information obtained in the course of an investigation or review,
the administering authority or the Commission, as the case may
be, shall, to the extent practicable, corroborate that
information from independent sources that are reasonably at their
disposal."); <u>see also</u> <u>Gallant Ocean (Thai.) Co., Ltd v. United
States</u>, 602 F.3d 1319, 1323 (Fed. Cir. 2010).

1185, 1190 (Fed. Cir. 1990) ("the Rhone presumption"[10]); KYD III

at 1378.  But the court also recognized that the Rhone

presumption is both rebuttable and limited to previously examined

exporters,[11] KYD III at 1379-81, and that "[e]ven if a party is

uncooperative, Commerce is still constrained by 'commercial

reality.'Gallant, 602 F.3d at 1323." KYD III at 1371.

Accordingly, the court again remanded to Commerce. Id. at 1384.

     In its Second Remand Results, the Department reviewed KYD's

submitted data and selected an AFA rate of 94.62 percent. Second

Remand Results 6. That rate represented sales transactions made

by two cooperative respondents reviewed in the third

administrative review, but was nonetheless higher than the

highest weighted-average margin of a cooperative respondent in

that review.  Second Remand Results 4-6.

     KYD now challenges the 94.62 percent rate.

---

     [10] "Despite the changed statutory context, the Federal
Circuit has since cited Rhone Poulenc for the proposition that
Commerce can select the highest prior dumping rate, see Ta Chen
Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339
(Fed. Cir. 2002) (citing Rhone Poulenc, 899 F.2d at 1190), and
for the proposition that Commerce is to 'calculate dumping
margins as accurately as possible,' Parkdale Int'l v. United
States, 475 F.3d 1375, 1380 (Fed. Cir. 2007) (citing Rhone
Poulenc, 899 F.2d at 1191)." KYD II, 704 F. Supp. 2d at 1330 n.8.

     [11] Commerce had not previously examined Master Packaging.
KYD III at 1380.

## STANDARD OF REVIEW

The Department, in its remand redetermination, must comply
with the terms of the court's remand order.  <u>Jinan Yipin Corp. v.
United States</u>, __ CIT __, 637 F. Supp. 2d 1183, 1185 (2009).  In
addition, the court "shall hold unlawful any determination,
finding, or conclusion found . . . to be unsupported by
substantial evidence on the record, or otherwise not in
accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i); <u>Koyo Seiko
Co. v. United States</u>, 20 F.3d 1160, 1164 (Fed. Cir. 1994).

The substantial evidence standard of review "can be
translated roughly to mean 'is [the determination]
unreasonable?'" <u>Nippon Steel Corp. v. United States</u>, 458 F.3d
1345, 1351 (Fed. Cir. 2006) (alteration in original) (quoting
<u>SSIH Equip. S.A. v. U. S. Int'l Trade Comm'n</u>, 718 F.2d 365, 381
(Fed. Cir. 1983)); <u>Daewoo Elecs. Co. v. Int'l Union</u>, 6 F.3d 1511,
1520 (Fed. Cir. 1993)("The specific determination we make is
'whether the evidence and reasonable inferences from the record
support'" Commerce's findings.).  The "court reviews the record
as a whole, including any evidence that 'fairly detracts from the
substantiality of the evidence,' in determining whether
substantial evidence exists." <u>Gallant Ocean</u>, 602 F.3d at 1323
(Fed. Cir. 2010) (quoting <u>Micron Tech., Inc. v. United States</u>,
117 F.3d 1386, 1393 (Fed. Cir. 1997).

## DISCUSSION

Plaintiff's main argument against the <u>Second Remand Results</u>
is that there is a more accurate method to calculate KYD's rate
than Commerce's chosen methodology, and that Commerce's
determination is contrary to law because KYD's data is "more than
sufficient" to establish Plaintiff's rate. Pl.'s Cmts. on <u>Second
Remand Results</u> 9, Sep. 9, 2011, ECF No. 101 ("Pl.'s Br.").[12]  KYD
contends that Commerce should have selected its rate based on its
own submitted data, and that any missing information could have
been approximated using data from the two cooperative
respondents. Pl.'s Br. 10-12.[13]

Regarding its own average price data, Plaintiff submits that
the U.S. price for KYD's purchases exceeded the price paid by the

_____

[12] The court has already rejected KYD's argument that
Commerce is required to use KYD's pricing information, finding
Commerce's argument that 19 U.S.C. § 1677m(e) does not require
the use of such information when it is "so incomplete that it
cannot serve as a reliable basis" for calculating a dumping
margin for the entries at issue to be reasonable. <u>KYD III</u> at
1377-78.

[13] Plaintiff correctly argues that <u>Gallant Ocean (Thai.) Co.
v. United States</u> requires only that Commerce determine a
"reasonably accurate estimate" of the rate that would have been
applied had the entity cooperated. <u>Gallant Ocean</u>, 602 F.3d at
1323 (Fed. Cir. 2010); Pl.'s Br. 13-14. The phrase originated in
<u>F.lli De Cecco di Filippo Far S. Martino S.p.A. v. United States</u>,
216 F.3d 1027, 1032 (Fed. Cir. 2010): "It is clear from
Congress's imposition of the corroboration requirement in 19
U.S.C. § 1677e(c) that it intended for an adverse facts available
rate to be a reasonably accurate estimate of the respondent's
actual rate, albeit with some built-in increase intended as a
deterrent to non-compliance."

two cooperative respondents by approximately a third, and that

these substantial differences illustrate that the AFA rate was

aberrational. Pl.'s Br. 10-11.  To Plaintiff, this data indicates

that Commerce's selected rate reflects a price that far exceeds

the average price KYD paid and King Pac and Master Packaging

received. Id. at 10.  Plaintiff claims that its pricing data,

while admittedly not sufficient to calculate an exact rate, is

still sufficient to establish a "reasonably accurate estimate of

the respondent[s'] actual rate" for KYD's imported entries. Id.

at 9, 14.

        Commerce disagrees, arguing that KYD's data does not take

into account the differences in the products it purchased or the

normal values of the merchandise King Pac or Master Packaging

sold, rendering KYD's conclusions on average prices it paid

versus average prices for merchandise sold by cooperative

respondents "meaningless." Second Remand Results 18.

        To Commerce, because the carrier bags KYD purchased are not

identical to those the cooperative respondents sold, and Commerce

does not know the manufacturing costs of the merchandise KYD

purchased, Commerce cannot simply make an adjustment in normal

value to calculate KYD's margin. Id. at 19.[14]  Moreover, Commerce

--------

[14] Plaintiff relies on Changzhou Wujin Fine Chem. Factory
Co. v. United States, __ CIT __, 2010 WL 3239213 (2010) to argue
that Commerce strayed from a practice of calculating rates for
uncooperative respondents by using normal values from cooperative
respondents.  But Plaintiff presents no facts to indicate that

notes that it does not have sufficient information regarding the adjustment amounts required under 19 U.S.C. § 1677a(c),[15] nor does it have sufficient normal value information.[16] <u>Second Remand Results</u> 4.

Plaintiff disagrees, stating that because KYD's sales were purchased on an FOB Thailand basis, international freight, marine insurance and U.S. brokerage and handling would not have been deducted from the U.S. price. Thus, Plaintiff maintains that the necessary information for these data elements was not missing. Pl.'s Br. 6.

Commerce counters that while this is correct for international freight, Commerce would still need more information such as the relative location of factories, domestic freight expenses and insurance costs, and identities of the freight companies exporters' used, rendering KYD's solutions insufficient because this information is not on the record. Def.'s Resp. to Cmts. Regarding Remand Determination 7-8, Oct. 3, 2011, ECF No. 114 ("Def.'s Resp.); Pl.'s Br. 5-7.

---

the mandatory respondent's merchandise at issue there was different from that of the uncooperative respondent, as Commerce demonstrates here. Pl.'s Br. 12.

[15] Examples include inland freight in Thailand, international freight and marine insurance. <u>Second Remand Results</u> 4.

[16] Including prices or adjustments to price such as imputed credit expense. <u>Id.</u>

Nonetheless, Commerce did consider KYD's submitted U.S. sales data. Second Remand Results 4-5. Specifically, it "used KYD's information to establish certain physical parameters of the U.S. sales King Pac and Master Packaging made to KYD as a guide in selecting an appropriate adverse facts-available rate from [two cooperative respondents',] Naraipak's or Polyplast's[,] transaction-specific margins." Id. at 5; Def.'s Resp. 3.

Commerce explained further, reasoning that the physical characteristics of the models examined may influence pricing behavior. Second Remand Results 5. Commerce noted that, in general, in this proceeding, Commerce used thirteen physical characteristics to match products. Id. KYD submitted information on only eight of those thirteen characteristics, so in examining products sold by Naraipak or Polyplast, Commerce looked for sales similar to KYD's imports based on those eight factors. Id.; see also Preliminary Results, 73 Fed. Reg. at 52,292 (unchanged in Final Results). Commerce did this to ensure that the sales of the responding companies considered were sales of products reasonably similar to KYD's imports. Second Remand Results 5-6.

Based on these parameters, Commerce, applying an adverse inference,[17] chose the highest transaction-specific margin of Naraipak and Polyplast's sales that shared the eight physical characteristics of the products imported by KYD from King Pak and

---

[17] Pursuant to 19 U.S.C. § 1677e(b).

Court. No. 09-00034                                    Page 13

Master Packaging. Second Remand Results 6; Def.'s Resp. 3.[18]

     Commerce argues that the margin selected in the Second

Remand Results is reliable as well as consistent with the court's

order; and that the corroboration requirement[19] in the statute

does not apply because Commerce used transaction-specific

information obtained during the investigation and thus did not

use secondary information in need of corroboration. Def.'s Resp.

4; see also 19 U.S.C. § 1677(e)c; KYD III at 1371.  Commerce adds

that even if the corroboration requirement were in play, that the

margin would still be relevant to King Pac and Master Packaging's

commercial reality because the carrier bags share the same

characteristics as those imported by KYD. Def.'s Resp. 4.

     While a selected rate must reflect commercial reality, it

---

     [18] Commerce selected a rate of 73.70 percent.  However,
after taking interested parties' comments into consideration,
Commerce decided on a rate of 94.62 percent. Second Remand
Results 6.  Plaintiff notes that after the adjustment of a
computer program relating to ink coverage was modified, Commerce
selected a new and higher "outlier" as the basis for the AFA
rate.  Plaintiff argues that after this modification, less than a
third of KYD's reported observations were of bags falling within
the criteria for this new sale. Id. at 15.
     Commerce admits a calculation error in the program comparing
the physical characteristics data, that it fixed accordingly in
the Second Remand Results. Id. at 14-16; Def.'s Resp. 10.
Commerce notes that KYD is not challenging that all eight
characteristics that KYD's products shared with examined
transactions exist, but rather only that the corrected value for
the ink-coverage characteristic resulted in a higher margin.
Def.'s Resp. 10.  Commerce discarded a rate based on only seven
of the physical characteristics as it would not have been as
accurate. Second Remand Results 15.

     [19] 19 U.S.C. § 1677e(c).

does not have to reflect the rate Commerce would have calculated

had King Pac and Master Packaging participated in the review.

Second Remand Results 18.  Rather, Commerce adequately reasoned

that because KYD's purchased carrier bags are not identical to

those sold by the cooperative respondents, an "apples-to-apples"

comparison is not likely. Id. at 19.

Accordingly, using KYD's own data to "describe the bounds of

transactions made by the cooperative respondents that [it]

considered for use as adverse facts available," id., Commerce

chose a rate that, on this record, could reasonably be accepted

as an approximation of KYD's rate, albeit with a built in

increase intended as a deterrent to non-compliance.  Commerce

thus satisfied the requirements of the remand order and gave an

adequate explanation for why it reviewed but did not utilize

KYD's other information. Id. at 18-19.

Accordingly, because King Pac and Master Packaging did not

provide sufficient usable information for the record, Commerce's

transaction-specific margin for an adverse rate does not conflict

with statutory requirements, and Commerce's selection is based on

substantial evidence, the Second Remand Results will be

sustained.[20]

---

[20] Defendant-Intervenors (Petitioners) contend that, in KYD
III, the court usurped the agency's investigative role and should
therefore vacate its decision and affirm Commerce's initial
determination. Def.-Int.'s Reply to KYD's Cmts. on Second Remand
Results, 4-6, Oct. 3, 2011, ECF No. 117("Def.-Int.'s Br.").

Court. No. 09-00034                                          Page 15

## <u>CONCLUSION</u>

For the reasons discussed above, the <u>Second Remand Results</u>

are AFFIRMED in all respects.


IT IS **SO ORDERED**:


                                          ____/s/   Donald C. Pogue____
                                          Donald C. Pogue, Chief Judge




Dated:      January 18, 2012
            New York, N.Y.

---

Because Defendant-Intervenors agree with the Remand
Determination, <u>id.</u> at 1, Commerce did not respond to their
comments, "as they are outside the scope of the [c]ourt's remand
order." Def.'s Resp. 10.  Plaintiff agrees with Commerce that
most comments filed by Petitioners do not relate to the remand.
Pl.'s Br. 8.
      The court has discussed above Plaintiff's one issue with
Petitioner's comments: the adjustment of the computer program
relating to ink coverage. Pl.'s Br. 8.
      On the Petitioners' remaining argument, Commerce contends,
persuasively, that it did not select a transaction-specific
margin of 108.64 percent because that transaction is less similar
to KYD's purchased merchandise than the merchandise corresponding
to Commerce's considered transactions. Def.'s Resp. 5.

Slip Op. 12-10

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KYD, INC., <br><br>       Plaintiff, <br><br>       v. <br><br> UNITED STATES, <br><br>       Defendant. <br><br> POLYETHYLENE RETAIL CARRIER BAG COMMITTEE, HILEX POLY CO., LLC, and SUPERBAG CORPORATION, <br><br>       Defendant-Intervenors. | Before: Donald C. Pogue, Chief Judge <br><br> Court No. 09-00034 |

**<u>JUDGMENT</u>**

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the Department of Commerce's Final Remand Redetermination Results with regard to the third administrative review of Polyethylene Retail Carrier Bags from Thailand, Aug. 18, 2011, ECF No. 98, are AFFIRMED.

                                     /s/  Donald C. Pogue
                              Donald C. Pogue, Chief Judge


Dated:     January 18, 2012
             New York, N.Y.